NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SECURUS TECHNOLOGIES, INC.,**
*Appellant*

**v.**

**GLOBAL TEL\*LINK CORPORATION,**
*Appellee*

---

2016-2573

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2015-00155.

---

Decided: July 14, 2017

---

DANIEL FLETCHER OLEJKO, Bragalone Conroy PC, Dallas, TX, argued for appellant. Also represented by JEFFREY BRAGALONE, JUSTIN KIMBLE, TERRY SAAD.

BYRON LEROY PICKARD, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for appellee. Also represented by JON WRIGHT, MICHAEL BRADLEY RAY, LAUREN C. SCHLEH, MICHAEL D. SPECHT.

---

Before NEWMAN, CHEN, and STOLL, *Circuit Judges*.

CHEN, *Circuit Judge*.

Securus Technologies, Inc. (Securus) appeals a final written decision from the United States Patent and Trademark Office Patent Trial and Appeal Board (Board) in an inter partes review (IPR) of claims 1–6 of U.S. Patent No. 7,853,243 ('243 Patent). The Board concluded that Securus did not meet its burden of proving that these challenged claims are unpatentable as obvious. Because the Board did not err in its conclusion, we *affirm*.

BACKGROUND

A. The '243 Patent

Global Tel*Link Corp. (GTL) owns the '243 Patent. The patent relates to a secure telephone call management system that can authenticate the identity of users seeking to make a telephone call from the inside of penal institutions or similar facilities. *See, e.g.*, '243 Patent col. 9 ll. 42–50. The claimed telephone system authenticates users before they attempt to make a phone call by requiring a user to first supply his or her pre-assigned personal identification number (PIN), as well as certain biometric data. *Id.* col. 12 ll. 18–30. Biometric data include "voice-prints, face architecture, signature architecture, finger-prints, retinal prints, hand geometry, and the infrared pattern of the face." *Id.* col. 12 ll. 8–11; *see also id.* col. 5 ll. 30–34.

The claimed telephone system also includes means for monitoring and recording the calls after they have been placed. *See, e.g., id.* col. 13 l. 63–col. 14 l. 3. Specifically, those means can monitor when unauthorized third parties join the calls and the system can then disconnect those calls if necessary. *See id.* col. 14 ll. 27–32.

Independent claim 1 is representative of the claimed invention:

1. A method for restricting access to a public telephone network using a telephone call management system, said method comprising the steps of:

assigning a first identification number to each of a plurality of potential callers;

recording a first voice print of at least one potential caller;

storing said first voice print and said first identification number in a database;

during each access attempt to said public telephone network by said potential caller:

prompting said at least one potential caller to input a second identification number;

recording a second voice print of said at least one potential caller;

matching said first and second identification numbers;

comparing said second voice print with said first voice print associated with said first identification number;

granting said at least one potential caller access to said public telephone network to attempt to place a telephone call if said second voice print matches said first voice print;

monitoring at least one conversation to detect the presence of a three-way call attempt; and

recording at least one conversation between said at least one potential caller and a third-party remotely located from said at least one potential caller if said recording is permissible; and

detecting the presence of predetermined keywords in audio of said at least one conversation.

*Id.* col. 51 l. 13–col. 52 l. 8.

## B.  The Prior Art

U.S. Patent No. 7,035,386 (Susen) addresses the problem of unauthorized access to telephone lines in private branch exchanges (PBX) of companies or mobile terminals, which can lead authorized users of those lines to incur unwanted expenses. *See* Susen col. 1 ll. 17–27. "For example, [employees'] personal conversations are frequently held via PBX lines of large corporations at the employer's expense." *Id.* col. 1 ll. 22–24. "Moreover, when telephone calls are made from a stolen or lost mobile telephone, the account of the lawful owner is always charged without the owner being able to directly prevent this." *Id.* col. 1 ll. 24–27. To combat these issues, Susen generally discloses the use of voice recognition to verify users before they can access a particular line on the PBX or mobile terminals. *See, e.g.*, *id.* col. 1 ll. 9–12; *see also* *id.* col. 2 ll. 54–61 ("[T]he voice signal of the subscriber placing the call is analyzed by voice recognition algorithms and compared with a reference data record or several reference data records for purposes of assignment."). Voice recognition can be used in conjunction with PINs in the verification process. *See id.* col 10 ll. 5–20.

Unlike Susen, U.S. Patent No. 6,064,963 (Gainsboro) is specifically targeted for use at penal institutions. *See* Gainsboro col. 1 ll. 6–15. Within these environments, Gainsboro addresses the problem of having employees of the institutions review recorded phone calls for suspicious behavior. *See id.*; *see also id.* col. 3 l. 55–col. 4 l. 10. Gainsboro's invention includes automatic speech recognition (ASR) technology to existing telephone systems in these institutions so as to eliminate the need for these employees. *See id.* col. 4 ll. 11–45. The integration of the ASR technology allows institutions, inter alia, to automate the monitoring and review of both live and recorded

calls for certain words or phrases that are potentially indicative of suspicious behavior.  *See id.*

## C.  The IPR

The Board instituted an IPR on Securus' assertion that the challenged claims are unpatentable as obvious under 35 U.S.C. § 103(a) (2012) over Susen and Gainsboro.

The parties disputed the broadest reasonable interpretation of the term "during each access attempt to said public telephone network by said potential caller" (access attempt limitation).  *See* J.A. at 17–19.  Specifically, Securus argued that the access attempt limitation only included the step of "prompting said at least one potential caller to input a second identification number" (prompting step).  *See id.* at 17, 18.  In support of this argument, Securus noted that the access attempt limitation is "followed by a colon without further punctuation and indentation," and the limitation thus can only include the prompting step as it is the only step that follows the colon.  *Id.* at 18.

GTL countered that the access attempt limitation included not only the prompting step, but also the additional steps of: (1) "recording a second voice print of said at least one potential caller" (recording step)[1]; (2) "matching said first and second identification numbers" (matching step); (3) "comparing said second voice print with said first voice print associated with said first identification number" (comparing voice step); and (4) "granting said at least one potential caller access to said public telephone network to attempt to place a telephone call if said second voice print matches said first voice print" (granting step).  *See id.*  In other words, an attempt to access the telephone

---

[1]    The other recording steps in claim 1 are irrelevant to the appeal.

network requires the prompting step, recording step, the matching step, and the comparing voice step, before ending on the granting step. *See id.* at 18. GTL argued that the granting step provided a "logical conclusion" to the access attempt limitation. *Id.* The Board agreed with GTL, pointing to testimony from GTL's expert, Dr. Leonard Forys, for support. *See id.*

Using this claim construction, the Board then found that, contrary to Securus' contention, Susen did not disclose all the steps in the access attempt limitation. *See id.* at 21–24. Notwithstanding this deficiency, the Board also found that Securus failed to explain why a person of ordinary skill in the art (skilled artisan) would combine Susen and Gainsboro to arrive at the claimed invention. *See id.* at 24–27. Securus, said the Board, only offered conclusory testimony from its expert, Dr. Robert Akl, that the skilled artisan would combine the references because they were generally in the same field of art. *See id.* at 26. The Board, therefore, concluded that Securus did not meet its burden of proving that the challenged claims are unpatentable as obvious. *See id.* at 27.

Securus timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012).

STANDARDS OF REVIEW

We review the Board's broadest reasonable interpretation of a claim term de novo, but its findings concerning extrinsic evidence for substantial evidence. *See Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, __ U.S. __, 135 S. Ct. 831, 841–42 (2015)). Likewise, we review the Board's ultimate conclusion of obviousness de novo, but the underlying factual findings for substantial evidence. *Veritas Techs. LLC v. Veeam Software Corp.*, 835 F.3d 1406, 1411 (Fed. Cir. 2016). Substantial evidence is "such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Blue*

*Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1337 (Fed. Cir. 2016) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938)).

DISCUSSION

A. Claim Construction

Securus contends that the Board erred in construing the access attempt limitation because (1) the limitation is followed by a colon and only the prompting step follows that colon, while the other steps are offset by semicolons, and (2) the Board improperly relied on the ipse dixit testimony of Dr. Forys that the access attempt limitation begins with the prompting step and ends with the granting step. *See* Appellant Br. at 32–34. We disagree.

In an IPR, the Board affords claim terms their broadest reasonable interpretation consistent with the specification. *Cuozzo Speed Techs., LLC v. Lee*, __ U.S. __, 136 S. Ct. 2131, 2142–46 (2016).

Here, although the Board may have been quick to consult Dr. Forys' testimony in construing the access attempt limitation, the Board still arrived at the proper interpretation in light of the intrinsic evidence. *See Microsoft Corp.*, 789 F.3d at 1297 ("To the extent the Board considered extrinsic evidence when construing the claims, we need not consider the Board's findings on that evidence because the intrinsic record is clear." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc))). We generally agree with Securus that the colon following the access attempt limitation is indicative that a list of particulars is to follow. But the most natural reading of the limitation is one that incorporates all the steps from the beginning of the attempt to access the telephone network to the end of that attempt. And this entails more than just the prompting step—it necessarily includes the recording step, the matching step, the comparing voice step, and the granting step. Only upon

being granted access to the telephone network does the attempt to access that network end.

The specification supports this construction. It explicitly identifies *multiple* steps that must occur between the start of the user's attempt to access the telephone network and the conclusion of that attempt:

> When a user *attempts to access* the telephone system . . . , the user may hear a series of voice prompts directing the user to first supply a PIN and then supply . . . [a] form of biometric information that is stored in [a] database. For example, if the user's . . . [biometric information] was stored digitally in the database, the user would have to supply . . . [the biometric information] to a device capable of . . . [recognizing] it and converting the resulting data to the same format as the information in the database. The . . . [recognized] data would then be compared to the information maintained in the storage database. If a positive match occurs based on the PIN and biometric data entered, then the user would be *granted access* to the system subject to user specific restrictions.

*Id.* col. 12 ll. 18–30 (emphasis added); *see also id.* col. 46 ll. 45–58.

Accordingly, the Board properly afforded the access attempt limitation its broadest reasonable interpretation consistent with the specification.

## B. Obviousness

Securus also contends that the Board erred in finding that Securus had not demonstrated that the skilled artisan would have been motivated to combine Susen and Gainsboro. *See* Appellant Br. at 46–49. The Board's finding, however, is supported by substantial evidence.

In an IPR, the petitioner has the burden of proving unpatentability of the challenged claims by a preponderance of the evidence. *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citing 35 U.S.C. § 316(e)). A claimed invention is unpatentable as obvious if the differences between the invention and the prior art are such that the invention would have been obvious to a skilled artisan. *See* 35 U.S.C. § 103.[2] An obviousness inquiry requires an examination of "the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (first citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); and then citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966)). The inquiry is a flexible one. *See Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1335 (Fed. Cir. 2016) (citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012)). Importantly, "it is not enough to simply show that the [prior art] references disclose the claim limitations; in addition,'it can be important to identify a reason that would have prompted [the skilled artisan] to combine the elements as the new invention does.'" *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303–04 (Fed. Cir. 2010) (quoting *KSR,* 550 U.S. at 401). Whether the skilled artisan would have had a reason to combine teachings in the prior art to arrive at the claimed invention is a question of fact.

---

[2] Congress amended § 103 when it passed the Leahy-Smith America Invents Act (AIA). Pub. L. No. 112–29, § 3(c), 125 Stat. 287 (2011). But because the application that led to the '243 Patent was filed before the effective date of the AIA, the pre-AIA version of § 103 applies.

*See id.* (citing *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1353 (Fed. Cir. 2012)).

Here, the Board correctly observed that Securus' proposed rationale to combine the teachings of Susen and Gainsboro was simply too conclusory to satisfy its burden of proving by a preponderance of the evidence that the skilled artisan would have combined these references in the way of the claimed invention. *See* J.A. at 26–27. In Securus' IPR petition, it asserted, without more, that because Susen and Gainsboro were drawn from the same general field of art, the skilled artisan would have turned to them to solve the problems identified in the '243 Patent. *See* J.A. at 45 ("Both prior art patents are in the same field of telecommunications monitoring and control."); *id.* at 56 ("Both Gainsboro and the '243 [P]atent are in the same field and drawn to systems for managing institutional calls. Thus, a [skilled artisan] would be motivated to combine Susen with Gainsboro to include monitoring said telephone call for a hook flash indicative of three-way calling." (citation omitted)); *id.* at 66 ("Thus, the combination of Susen and Gainsboro discloses each and every limitation of . . . [the challenged claims]. [They] . . . are therefore rendered obvious under 35 U.S.C. § 103."). Its assertion remained just as thin in its reply brief submitted to the Board. *See id.* at 1308 ("[The skilled artisan] would have been motivated to combine the teachings of the Susen and Gainsboro patents given their similar purpose of telecommunications monitoring and control. Specifically, each of these references is a part of the relevant art that a person of ordinary skill would have sought out when facing the problems allegedly solved by the '243 [P]atent—enhanced authentication of callers and monitoring of inmate calls." (citations omitted)); *see also id.* at 1308–25. And Securus' expert, Dr. Akl, did little to develop the assertion. *See id.* at 208–12, 19–25.

Securus' case against the patentability of the claimed invention amounts to "mere conclusory statements,"

which fall short of "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR*, 550 U.S. at 418 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). For example, Securus failed to explain how or why the skilled artisan would combine the teachings of Susen, which are generally directed to authorizing telephone access through voice recognition in corporate settings, with the teachings of Gainsboro, which are generally directed to listening in on and reviewing phone conversations in penal settings, to arrive at the claimed invention.[3] We agree with the Board that a broad characterization of Susen and Gainsboro as both falling within the same alleged field of "telecommunications monitoring and control," without more, is not enough for Securus to meet its burden of presenting a sufficient rationale to support an obviousness conclusion. *See, e.g.*, *Microsoft Corp. v. Enfish, LLC*, 662 F. App'x 981, 990 (Fed. Cir. 2016) ("[The] Board correctly concluded that [the petitioner] did not articulate a sufficient motivation to combine. With respect to [certain challenged claims], [the petitioner] gave no reason for the motivation of a person of ordinary skill to combine [the two references] except that the references were directed to the same art or same techniques . . . ."). Such short-cut logic

---

[3] We note that U.S. Patent No. 5,655,013 ('013 Patent), which is cited in the '243 Patent, purportedly addresses "the need for a control management and monitoring system in . . . [penal] settings." '243 Patent col. 8 ll. 6–14. And it apparently discloses a system that "deals primarily with the identification of a user through use of a PIN and restricting telephone communications through a profile accessed by the PIN." *Id.* col. 8 ll. 10–12. The '013 Patent thus appears to indicate that it was known to require users of phones inside a penal institution to enter an authenticating PIN *and* that the phone calls would then be monitored.

would lead to the conclusion that any and all combinations of elements known in this broad field would automatically be obvious, without the need for any further analysis. The Board, therefore, properly rejected Securus' assertion of obviousness.[4]

## CONCLUSION

For the foregoing reasons, we *affirm* the judgment of the Board, concluding that Securus did not meet its burden of proving that the challenged claims are unpatentable as obvious by a preponderance of the evidence. On the limited grounds before the Board, the Board appropriately found that Securus did not articulate an adequate rationale to combine Susen and Gainsboro.

## COSTS

Costs to appellee.

## **AFFIRMED**

---

[4]    Because Securus has not demonstrated that a skilled artisan would have combined Susen and Gainsboro, we decline to address the Board's finding that Susen does not disclose all the steps of the access attempt limitation, as well as any of Securus' arguments tied to that finding, including those that Securus has disguised as claim construction arguments. *See* Appellant Br. at 34–38; *see also Transocean*, 617 F.3d at 1303–04.