# United States Court of Appeals for the Federal Circuit

---

**ICON HEALTH AND FITNESS, INC.,**
*Appellant*

**v.**

**STRAVA, INC., UA CONNECTED FITNESS, INC.,**
*Appellees*

---

2016-1475

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,359.

---

Decided: February 27, 2017

---

LARRY R. LAYCOCK, Maschoff Brennan Laycock Gilmore Israelsen & Wright, Salt Lake City, UT, argued for appellant. Also represented by JOHN T. GADD; MARK W. FORD, ROBERT PARRISH FREEMAN, JR., Park City, UT.

GLENN E. FORBIS, Harness, Dickey & Pierce, PLC, Troy, MI, argued for appellees. Also represented by MATTHEW L. CUTLER, DOUGLAS ALAN ROBINSON, St. Louis, MO.

---

Before O'MALLEY, REYNA, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Concurring-in-part and dissenting-in-part opinion filed by *Circuit Judge* O'MALLEY.

WALLACH, *Circuit Judge*.

Appellees Strava, Inc. and UA Connected Fitness, Inc. (together, "Strava") sought inter partes reexamination of several claims of U.S. Patent No. 7,789,800 ("the '800 patent"). During the reexamination, certain claims were cancelled, and others (claims 38–100) were added. An examiner at the U.S. Patent and Trademark Office ("USPTO") found certain claims obvious over various prior art references. Appellant Icon Health & Fitness, Inc. ("Icon") appealed the Examiner's findings to the USPTO's Patent Trial and Appeal Board ("PTAB"). In its decision on appeal, the PTAB affirmed the Examiner's rejection of all the pending claims as obvious. *See Strava, Inc. v. Icon Health & Fitness, Inc.*, No. 95/002,359, 2015 WL 5723014, at *1 (P.T.A.B. Sept. 28, 2015).

Icon appeals the PTAB's rejection of claims 43, 46, 57–62, 65, 71, 74, 86, and 98–100 ("the Asserted Claims"). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012). We vacate-in-part, affirm-in-part, and remand for additional proceedings consistent with this opinion.

## DISCUSSION

Icon presents two arguments on appeal. First, Icon contends that "[t]he principal error affecting all aspects of the reexamination proceedings is Strava's use of an expert to supply legal conclusions of obviousness" and the PTAB's reliance on those conclusions. Appellant's Br. 10. Second, Icon avers that the PTAB erred in affirming the Examiner's rejection of the Asserted Claims, either for lack of substantial evidence or for legal error in the conclusion of obviousness. *Id.* at 17–35. After summarizing

our standard of review and the applicable legal standard, we address these arguments in turn.

## I. Standard of Review and Legal Standard for Obviousness

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re NuVasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (internal quotation marks and citations omitted).

A patent claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the [relevant] art [('PHOSITA')] . . . ." 35 U.S.C. § 103(a) (2006).[1] The ultimate determination of obviousness is a question of law, but that determination is based on underlying factual findings. *See In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The underlying factual findings include (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the

---

[1] Congress amended § 103 when it enacted the Leahy-Smith America Invents Act ("AIA"). Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287 (2011). However, because the application that led to the '800 patent has never contained a claim having an effective filing date on or after March 16, 2013 (the effective date of the statutory changes enacted in 2011), or a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, the pre-AIA § 103 applies. *See id.* § 3(n)(1), 125 Stat. at 293.

level of ordinary skill in the pertinent art," and (4) the presence of secondary considerations of nonobviousness such "as commercial success, long felt but unsolved needs, failure of others," and unexpected results. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966); *United States v. Adams*, 383 U.S. 39, 50–52 (1966).

## II. The PTAB Did Not Err by Relying Upon Strava's Expert's Declarations

Icon avers that the PTAB erred because it adopted Examiner findings tainted by legal defect. Specifically, Icon contends that the Examiner improperly "affirm[ed] legal conclusions" in the declarations of Strava's expert, Frank Koperda. Appellant's Br. 12; *see* J.A. 1173–87 ("First Koperda Decl."), 1559–77 ("Second Koperda Decl."). According to Icon, Mr. Koperda's Declarations "go well beyond supplying opinions regarding factual matters" and, "instead[,] venture further, improperly opining as to the legal conclusion of obviousness." Appellant's Br. 12; *see id.* at 15–16 (listing instances where Mr. Koperda stated something "would have been obvious" or some variant thereof). Because the Examiner cited to large portions of Mr. Koperda's Declarations, Strava argues, Mr. Koperda's legal conclusions "appear[] to have supplanted" the Examiner's analysis, *id.* at 16, mandating reversal, *id.* at 17. Before we address these arguments on the merits, we first must determine whether we may consider them.

### A. Waiver Is Not Appropriate

It is uncontested that Icon failed to raise before the PTAB arguments regarding the Examiner's purported reliance on Mr. Koperda's Declarations. Therefore, we must determine whether Icon waived these arguments on appeal.

While we "retain[] case-by-case discretion over whether to apply waiver," *Harris Corp. v. Ericsson Inc.*, 417

F.3d 1241, 1251 (Fed. Cir. 2005), "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below," *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). However, "[u]nder certain circumstances, we may consider issues not previously raised . . . ." *Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376, 1379 (Fed. Cir. 2015). Some of the relevant considerations include whether (1) "the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice"; (2) "the proper resolution is beyond any doubt"; (3) "the appellant had no opportunity to raise the objection" below; (4) "the issue presents significant questions of general impact or of great public concern"; or (5) "the interest of substantial justice is at stake." *Id.* (citations omitted). We also may consider, inter alia, whether the issue has been fully briefed, a party will be prejudiced by consideration of the issue, or no purpose will be served by remand. *See id.* at 1380.

Certain considerations weigh in favor of finding waiver: whether Mr. Koperda's Declarations contained legal conclusions is not a pure question of law; Strava had the opportunity to raise its objections to Mr. Koperda's Declarations below; and the interest of substantial justice is not at stake in that neither party will be deprived a legal right or evade judicial review. *See id.* at 1379. However, other considerations weigh in favor of exercising our discretion and deciding the issue: the proper resolution is clear, and the arguments raise an issue of general impact in that the issue potentially could affect the weight afforded to a large number of expert declarations containing similar statements. *Cf. Broad. Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1366 (Fed. Cir. 2005) (stating that an "issue presents significant questions of general impact" when it "potentially impacts a large number of patents" (citations omitted)). Because the issue has been fully briefed, the record is complete, there will be no prejudice to any party, and no purpose is

served by remand, we will consider Icon's arguments. *See Automated Merch.*, 782 F.3d at 1379–80 (exercising discretion to review in a case involving similar circumstances).

### B. The PTAB Was Permitted to Rely on Mr. Koperda's Declarations in Support of Its Factual Findings

Having found waiver inapplicable, we must answer whether the PTAB (by virtue of its adoption of some of the Examiner's findings) erred because it relied upon certain aspects of Mr. Koperda's Declarations to support its conclusion. Icon acknowledges that "[i]t is not improper for an expert to supply . . . factual information or to opine as to factual matters," Appellant's Br. 13, and Icon does not dispute that Mr. Koperda was qualified to supply factual information to the Examiner, Oral Argument 8:09–8:26, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1475.mp3. Instead, Icon argues that the Examiner erred because he extensively cited to statements in the First and Second Koperda Declarations, one of which Strava submitted with its April 5, 2013 Comments After Non-Final Office Action ("Strava's April 2013 Comments") (J.A. 1204–66) and the other with its November 6, 2013 Comments After Non-Final Action Closing Prosecution ("Strava's November 2013 Comments") (J.A. 1524–57). According to Icon, the Examiner "did not form his own legal conclusions of obviousness" but rather "adopted the legal conclusions provided to him by . . . Mr. Koperda." Appellant's Br. 17.

Icon's arguments ignore the standard against which we review PTAB determinations. "We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline*, 811 F.3d at 449 (citation omitted). To the extent Icon challenges the PTAB's factual findings, as adopted from the Examiner, the PTAB is permitted to weigh expert testimony and other record evidence and, in so doing, rely on certain portions of an

expert's declaration while disregarding others. *See Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003) ("[W]hat the [PTAB] consistently did was accord little weight to broad conclusory statements that it determined were unsupported by corroborating references. It is within the discretion of the trier of fact to give each item of evidence such weight as it feels appropriate." (citation omitted)); *see also In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he [PTAB] is entitled to weigh the declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations . . . ." (citations omitted)).

To the extent Icon makes a legal argument, there is no per se prohibition against relying on an expert's declaration in support of factual findings underlying a legal conclusion of obviousness solely because the declaration states that something "would have been obvious." Indeed, we frequently have affirmed PTAB determinations on obviousness that rely on expert declarations that include such statements, so long as other aspects of the declarations contain statements related to factual findings. *See Veritas Techs. LLC v. Veeam Software Corp.*, 835 F.3d 1406, 1413 (Fed. Cir. 2016) (affirming the PTAB's conclusion of obviousness that relied on, inter alia, an expert's statements that "*it would have been obvious* that" a prior art reference discloses a limitation in the disputed patent application (emphasis added) (internal quotation marks and citation omitted)); *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1293 (Fed. Cir. 2015) (affirming the PTAB's conclusion of obviousness that was based, in part, upon an expert's statement that "it *would have been obvious . . .* to incorporate" a prior art reference's capabilities into another prior art reference (emphasis added) (citation omitted)). To determine if an expert's statement is directed to factual findings or the legal conclusion of obviousness, we look to the statement not in isolation, but in the context of the whole declaration. *Cf.*

*VirnetX Inc. v. Apple Inc.*, Nos. 2015-1934, -1935, 2016 WL 7174130, at *4 (Fed. Cir. Dec. 9, 2016) ("We will not find legal error based upon an isolated statement stripped from its context."). Therefore, we will review the PTAB's rejection of the Asserted Claims in accordance with the operative standard of review.

### III. The PTAB Erred as to Some, But Not All, of the Asserted Claims

Icon challenges the PTAB's determination that the Asserted Claims would have been obvious over various prior art references. Of those references, Icon contests the PTAB's determination as to: (1) claims 57–62 and 65 over U.S. Patent No. 7,689,437 ("Teller"), Appellant's Br. 17–20; (2) claim 86 over Teller, *id.* at 21–22; (3) claims 46 and 74 over U.S. Patent No. 6,198,394 ("Jacobsen"), *id.* at 22–28; (4) claims 98–100 over U.S. Patent Nos. 6,013,007 ("Root") and 6,585,622 ("Shum"), *id.* at 28–32; and (5) claims 43 and 71 over U.S. Patent No. 6,066,075 ("Poulton"), *id.* at 32–35. After a brief discussion of the '800 patent, we address the Asserted Claims in turn, evaluating whether the PTAB made factual findings with the requisite evidentiary basis and adequately explained its findings.

### A. The '800 Patent

Entitled "Methods and Systems for Controlling an Exercise Apparatus Using a USB Compatible Portable Remote Device," the '800 patent generally discloses "[a] portable system [that] retrieves one or more exercise programs from a remote communication system that provides motivational content for a user exercising upon an exercise mechanism." '800 patent, Abstract. The Asserted Claims of the '800 patent are divided into five groups for the purposes of this appeal. We address Icon's arguments on a group-by-group basis.

## B. Claims 57–62 and 65

Claims 57–62 and 65 each recite "a cradle that includes electrical contacts" and a "first computing device [with] electrical contacts configured to mate with the cradle electrical contacts." J.A. 1740 (claim 57), 1742–43 (claim 58), 1745 (claim 59), 1748 (claim 60), 1750 (claim 61), 1753 (claim 62), 1760 (claim 65). Icon argues that the PTAB's rejection of claims 57–62 and 65 as obvious must be reversed because the PTAB's failure to address these claims meant that the PTAB's Decision on Appeal "cannot be said to be one supported by substantial evidence." Appellant's Br. 18. We agree that the PTAB failed to make the requisite factual findings or provide the attendant explanation and, therefore, vacate and remand for additional factual findings and explanation.

### 1. Neither the PTAB nor the Examiner Made the Requisite Factual Findings or Provided the Attendant Explanation

To determine whether the PTAB made the necessary factual findings with an adequate evidentiary basis, we must determine whether the PTAB incorporated by reference the Examiner's factual findings and whether those findings were adequate, as Strava alleges. Appellees' Br. 24. The PTAB rejected Icon's arguments as to claims 57–62 and 65 by asserting only that Icon "merely restates previous arguments regarding contacts of the cradle as discussed above." *Strava*, 2015 WL 5723014, at *11. But, as Strava admits, the PTAB had never actually addressed those arguments above. Oral Argument, 14:26–14:55, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1475.mp3. In fact, that one sentence is the PTAB's only reference to the "cradle," "contacts," or "electrical" limitations recited in claims 57–62 and 65. *See generally Strava*, 2015 WL 5723014. The PTAB's Decision on Appeal thus contains no substantive discussion of the limitations at issue for claims 57–62 and 65.

The PTAB, however, also stated that, "[t]o any extent we do not specifically address any . . . remaining arguments, we agree with [Strava's] rebuttal of such . . . as well as the Examiner's response to the same . . . ." *Id.* at *9 (citing to the Examiner's Right of Appeal Notice (J.A. 1641–56) and Strava's PTAB Response Brief (J.A. 2591–98)). According to Strava, this catch-all statement incorporated by reference the Examiner's Right of Appeal Notice, which "in turn incorporated by reference [Strava's November 2013] Comments . . . , which rely upon the Teller reference and Mr. Koperda's Declarations, which constitute substantial evidence." Appellee's Br. 24. This multi-layered incorporation by reference does not satisfy the substantial evidence standard of review.

As an initial matter, the PTAB was authorized to incorporate the Examiner's findings. "It is commonplace in administrative law for a *reviewing body* within an agency to adopt a *fact-finding body's* findings. On judicial review, the adopted material is treated as if it were part of the reviewing body's opinion." *In re Cree, Inc.*, 818 F.3d 694, 698 n.2 (Fed. Cir. 2016) (emphases added) (citations omitted). The PTAB is no exception. *See In re Brana*, 51 F.3d 1560, 1564 n.13 (Fed. Cir. 1995) (upholding the PTAB's findings, although it "did not expressly make any independent factual determinations or legal conclusions," because it had "expressly adopted" the examiner's findings by stating that it "agree[d] with the examiner's well reasoned, well stated[,] and fully supported by citation" findings (alterations modified) (internal quotation marks and citation omitted)). Therefore, the PTAB was authorized to adopt the Examiner's findings in the Right of Appeal Notice.

Moreover, the PTAB identified the incorporated material with sufficient particularity. "To incorporate material by reference, the host document must identify with *detailed particularity* what specific material it incorporates and *clearly indicate where that material is found* in the

various documents." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (emphases added). The PTAB identified with detailed particularity what specific material it incorporated—i.e., Strava's PTAB Response Brief and the Examiner's Right of Appeal Notice. *See Strava*, 2015 WL 5723014, at *9. By identifying page ranges for those documents, *see id.* (citing J.A. 1641–56, 2591–98), the PTAB clearly indicated where that material is found, *see Advanced Display*, 212 F.3d at 1282.

Nevertheless, the PTAB's incorporation by reference of the Examiner's factual findings as to claims 57–62 and 65 gives us considerable pause. The PTAB purported to incorporate portions of the Examiner's Right of Appeal Notice that address these claims. *Strava*, 2015 WL 5723014, at *9. In the Right of Appeal Notice, however, the Examiner only stated that it "agree[d] with" and "incorporated by reference" Strava's November 2013 Comments as to claims 57–62 and 65. J.A. 1643. Neither the PTAB nor the Examiner made any factual findings; instead, both purported to incorporate by reference arguments drafted by Strava's attorneys. *See Strava*, 2015 WL 5723014, at *9 (citing Strava's PTAB Response Brief (J.A. 2591–98) and Examiner's Right of Appeal Notice (J.A. 1641–56), the latter of which cites Strava's November 2013 Comments (J.A. 1541–42)).

Attorney argument is not evidence. *See, e.g., Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("[U]nsworn attorney argument . . . is not evidence and cannot rebut . . . other admitted evidence . . . ."); *see also* Manual of Patent Examining Procedure § 2145 (9th ed. Nov. 2015) ("Attorney argument is not evidence unless it is an admission, in which case, an examiner may use the admission in making a rejection."). Neither the PTAB's adoption of Strava's PTAB Response Brief nor the Examiner's adoption of Strava's November 2013 Comments transform Strava's attorney argument

into factual findings or supply the requisite explanation that must accompany such findings.   As we recently explained,

> [t]wo distinct yet related principles are relevant to our review.  First, the PTAB must make the necessary findings and have an adequate evidentiary basis for its findings. . . . Second, the PTAB must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. . . .
>
> This explanation enables the court to exercise its duty to review the PTAB's decision to assess whether those decisions are arbitrary, capricious, an abuse of discretion, or . . . unsupported by substantial evidence . . . .

*NuVasive*, 842 F.3d at 1382 (internal quotation marks and citations omitted).  Because the PTAB failed to comport with what these principles demand, the PTAB's rejection of these claims must be vacated and the case remanded for additional PTAB findings and explanation. *See, e.g.*, *In re Van Os*, 844 F.3d 1359, 1362 (Fed. Cir. 2017) (explaining that the court vacates and remands when additional fact finding and explanation is warranted).

## C. Claim 86

Claim 86 recites "a cradle that includes an [infrared ('IR')] interface" and a "first computing device [with an] IR wireless interface . . . configured to send the physical activity related information to the interface module via the IR interface." J.A. 1787.  Icon's claim 86 arguments are similar to those that it raises as to claims 57–62 and 65; that is, Icon avers that the PTAB "failed to substantively address [the elements in] this limitation" and the

"conclusion that claim 86 is obvious must therefore be reversed." Appellant's Br. 21, 22. We disagree.

### 1. The PTAB Made the Requisite Factual Findings with an Adequate Evidentiary Basis

The PTAB stated that, "[r]egarding claim 86, [Icon] merely restates arguments already addressed previously." *Strava*, 2015 WL 5723014, at *11. But, once again, the PTAB never actually addressed those arguments above, as Strava admits. Oral Argument, 14:26–14:55, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-1475.mp3. Indeed, the PTAB never discussed "IR," "contacts," or "cradle" as recited in claim 86. *See generally Strava*, 2015 WL 5723014. The PTAB's treatment of claim 86, however, differs from its treatment of claims 57–62 and 65 in one key respect: unlike claims 57–62 and 65, the Examiner made his own factual findings as to claim 86. *See* J.A. 1652–53.

As explained above, the PTAB incorporated sections of the Examiner's Right of Appeal Notice. *See Strava*, 2015 WL 5723014, at *9. This includes a section where the Examiner found that "Root teaches the first computing device [that] . . . includes an IR interface" and that "Teller teaches [that] the uploading of data from [a] sensor device . . . can 'be accomplished by using a cradle . . . that is electronically coupled to [a] personal computer . . . into which [the] sensor device . . . can be inserted.'" J.A. 1652 (quoting Teller col. 8 ll. 38–41). In addition, the Examiner found that "USB ports were well known at the time since Teller teaches their existence" and, thus, could be used to "electronically couple[]" the cradle to the computer device. J.A. 1652 (citing Teller col. 8 l. 36).

The Examiner's factual findings have an adequate evidentiary basis. Root discloses a "personal performance monitor and feedback device," Root col. 4 l. 17, and an "[IR]-type port," *id.* col. 6 l. 2; *see* J.A. 1703 (Icon acknowledging that Root discloses a personal performance moni-

tor and feedback device that "appear[s] to have [IR] capabilities"). Teller's specification recites the use of a cradle to establish a physical connection for uploading the sensor device's data to a personal computer. *See* Teller col. 8 ll. 37–41 (teaching the use of a USB or a "cradle . . . that is electronically coupled to a personal computer . . . into which [a] sensor device . . . can be inserted, as is common in many commercially available digital assistants"); *see also* J.A. 1182 (First Koperda Declaration stating that "[s]uch a device would necessarily include electrical contacts to mate electrical components"). Moreover, Teller teaches that an IR connection can be substituted for the physical connection. *See* Teller col. 8 ll. 44–47 (explaining that "[t]he data collected by [a] sensor device . . . may be uploaded by first transferring the data to [a] personal computer . . . by [IR] . . . transmission"). Substantial evidence thus supports the Examiner's finding that Root and Teller teach "a cradle that includes an IR interface" as recited in claim 86.

### 2. The PTAB Satisfactorily Explained Its Determination

Because the PTAB incorporated by reference the Examiner's factual findings, we now consider whether the PTAB adequately explained its reasoning. As with the factual findings, the PTAB adopted the Examiner's explanation. *Strava*, 2015 WL 5723014, at *9. The Examiner made factual findings as to the scope and content of known elements of Root and Teller, and then explained that "it would have been obvious to modify Root to place the first computer device . . . in a cradle as taught by Teller to thereby transfer information using an IR interface between the first computer device . . . and the cradle." J.A. 1652–53.

Undoubtedly, it would be preferable for the PTAB to provide its own reasoned explanation. Nonetheless, we can discern that the Examiner—and, thus, the PTAB— considered claim 86's disclosure of "a cradle that includes

an [IR] interface," J.A. 1787, to be the mere "combination of familiar elements": Root's device and Teller's cradle and IR connection, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). This is sufficient, if minimally, to explain the connection between the Examiner's factual findings and legal conclusion.

### D. Claims 46 and 74

Claims 46 and 74 each recite "an audio input device [that] includ[es] a microphone configured to gather audio inputs from the user using a voice activated controller" ("the voice activated controller limitation") and "a radio interface configured" to send and receive audio signals ("the two-way audio radio limitation"). J.A. 1723 (claim 46); *see* J.A. 1770 (claim 74) (similar). Icon argues that the PTAB erred in affirming the Examiner's rejection for obviousness of these two limitations in claims 46 and 74. Appellant's Br. 22–28. Because the PTAB failed to make the requisite factual findings or provide the attendant explanation, we vacate and remand for additional proceedings. *See Van Os*, 844 F.3d at 1362.

### 1. Neither the PTAB nor the Examiner Made the Requisite Factual Findings or Provided the Attendant Explanation

When addressing claims 46 and 74 generally, the PTAB stated that it was "not persuaded" by Icon's arguments as to these claims because Icon had not "rebutt[ed] the substance" of the First Koperda Declaration and that "the Examiner's rejection [was] sufficiently supported by the record." *Strava*, 2015 WL 5723014, at *11. The PTAB made only vague references to "the microphone . . . of Jacobsen" and the "two-way audio radio limitation" when summarizing Icon's arguments. *Id.* (internal quotation marks omitted). At no point did the PTAB make explicit findings as to these elements or specify what aspects of Jacobsen and the First Koperda Declaration it found persuasive. *See id.*

As with claims 57–62 and 65, the PTAB never made factual findings with a basis in the record or provided the requisite explanation to support its findings for claims 46 and 74. It merely summarized Icon's arguments and stated that the "Examiner's rejection [was] sufficiently supported by the record." *Id.* However, the PTAB cannot satisfactorily make a factual finding and explain itself by merely "summariz[ing] and reject[ing] arguments without explaining why [it] . . . accepts the prevailing argument." *NuVasive*, 842 F.3d at 1383.

To the extent that the PTAB adopted the Examiner's determination as to claims 46 and 74, we find it similarly inadequate. In contrast to its discussion of claim 86, the Examiner never made a factual finding based on record evidence and failed to explain its reasoning for rendering claims 46 and 74 unpatentable. Instead, the Examiner stated only that he "agree[d] with" and "incorporated by reference" Strava's November 2013 Comments regarding the voice activated controller limitation in claims 46 and 74. J.A. 1643. Attorney argument is not evidence or explanation in support of a conclusion. *See, e.g., Gemtron*, 572 F.3d at 1380; *see also NuVasive*, 842 F.3d at 1383 (providing that the fact finder must explain it why accepts the prevailing argument).

### E. Claims 98–100

Claims 98–100 each recite "an accelerometer" that is "integrally included in a portable first computing device." J.A. 1796–97 (claims 98–100). Icon argues that the PTAB erred in affirming the Examiner's rejection of claims 98–100 for obviousness over Root and Shum because Icon showed that "the proposed modification to Root of removing the GPS and substituting Shum's accelerometer would change Root's 'principle of operation.'" Appellant's Br. 29 (quoting *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012)). According to Icon, "this modification would render the prior art GPS device . . . unsatisfactory for its intend-

ed purpose because, unlike a GPS receiver . . . , an accelerometer device is simply not capable of 'continuously and accurately determin[ing] the position of an outdoor athlete anywhere in the world.'" *Id.* at 31–32 (alterations in original) (quoting Root col. 2 ll. 5–7). Although the PTAB made a factual finding, this finding did not have an adequate basis in the record, and the PTAB did not adequately explain its reasoning. Thus, we vacate and remand for additional PTAB findings and explanation. *See Van Os*, 844 F.3d at 1362.

### 1. The PTAB Did Not Provide an Adequate Evidentiary Basis for its Finding

The PTAB "sustain[ed] the Examiner's rejection" of claims 98–100. *Strava*, 2015 WL 5723014, at *12. Icon had argued that *substituting* Shum's accelerometer for Root's GPS would change Root's principle of operation. J.A. 1705. The PTAB determined that Icon's argument "ignor[ed] other rationales set forth by the Examiner and/or [Strava]," an apparent adoption of Strava's argument that the references also teach *combining* Shum's accelerometer and Root's GPS in Root's system. *Strava*, 2015 WL 5723014, at *12. Thus, "regardless of the mere substitution rationale," the PTAB concluded that "the rejection may properly be supported by other rationales, which [Icon] d[id] not challenge." *Id.*

While the PTAB found that Shum's accelerometer and Root's GPS could be combined in Root's system, it did not provide any evidentiary basis for this finding. *See id.* Icon's failure to produce evidence that the references could not be combined does not relieve the PTAB of its obligation to provide an "adequate evidentiary basis for its findings." *NuVasive*, 842 F.3d at 1382 (internal quotation marks and citation omitted).

To the extent that the PTAB adopted the Examiner's finding as to claims 98–100, we find them similarly inadequate because the Examiner's Right of Appeal Notice

lacks any evidentiary basis for its finding. Once again, the Examiner stated only that it "agree[d] with" and "incorporated by reference" Strava's November 2013 Comments, J.A. 1654, but attorney argument is not evidence, *see, e.g., Gemtron*, 572 F.3d at 1380.

### 2. The PTAB Did Not Satisfactorily Explain Its Reasons for Its Determination

Even if we determined that the PTAB provided an adequate evidentiary basis for its finding that it would have been reasonable for a PHOSITA to combine Shum's accelerometer and Root's GPS, it did not satisfactorily explain its reasoning. The PTAB's sole reason for its finding was that Icon "d[id] not challenge" the combination rationale. *Strava*, 2015 WL 5723014, at *12. This is insufficient. To be sure, the PTAB is permitted to credit a party's argument as part of its reasoned explanation of its factual findings; however, the PTAB still must "explain[] why [it] accepts the prevailing argument." *NuVasive*, 842 F.3d at 1383 (citation omitted). The PTAB failed to do so here.

To the extent that the PTAB adopted the Examiner's rationale, that rationale cannot salvage the PTAB's deficient explanation. Once again, the Examiner stated only that it "agree[d] with" and "incorporated by reference" Strava's November 2013 Comments. J.A. 1654. That is no explanation at all. *See NuVasive*, 842 F.3d at 1383 (providing that the fact finder must explain it why accepts the prevailing argument).

### F. Claims 43 and 71

Finally, claims 43 and 71 each recite "a portable first computing device" that includes an "electronic display [that] is configured to function as a virtual reality [('VR')] display" and that includes an "electronic display [that] is . . . configured to display . . . data" related to physical activity. J.A. 1715–18 (claim 43), 1766–67 (claim 71).

Icon contests whether Poulton discloses the VR display in these claims. *See* Appellant's Br. 33. Icon contends that the PTAB erred in rejecting claims 43 and 71 because Root is "portable" and "teaches away from incorporating the external and massive [cathode ray tube ('CRT')] array of Poulton." *Id.* at 35. Icon adds that the PTAB "based its affirmance in part on Strava's misleading argument that written description support was an open issue," even though the Examiner withdrew the written description rejections. *Id.* at 33. We disagree.

### 1. The PTAB Made the Requisite Factual Findings with an Adequate Evidentiary Basis

The PTAB found that it would have been obvious to modify Root to use the VR display disclosed by Poulton because "the '800 patent does not describe a [VR] display that is part of a portable device." *Strava*, 2015 WL 5723014, at *10 (citation omitted). Before the PTAB, Icon argued that Poulton "does not teach a portable [VR] display" or "a single discrete monitor" and, thus, teaches away from the portability disclosed by Root. *Id.*; *see* J.A. 1695–97.

In rejecting these arguments, the PTAB noted that Icon had "selectively cite[d] the [s]pecification to assert that the display . . . must be portable" and that "'a [VR] display' does not necessarily require a single discrete monitor . . . , but may encompass a mosaic of monitors that acts as a single [VR] display." *Strava*, 2015 WL 5723014, at *10. However, "when looking at the disclosure as a whole, . . . the '800 patent discloses that the 'display . . . can be remote from [a] control device . . .' and that this remote 'display . . . can be a [VR] display, [CRT display], and the like.'" *Id.* (quoting '800 patent col. 51 ll. 57–60). On this basis, the PTAB found that the '800 patent "does not support an integral VR display," i.e., a display imbedded in a portable system, but rather supports "remote displays only," i.e., displays that are not

imbedded in the portable system and are located on a treadmill, for example. *Id.*

In addition, the PTAB found that the '800 patent "equates VR displays to CRT displays" in a similar manner to Poulton, such that the '800 patent and Poulton teach similar levels of portability. *Id.* The record supports the PTAB's finding. *Compare* '800 patent col. 51 ll. 58–60 (stating that the "display . . . can be a [VR] display, [CRT display], and the like"), *with* Poulton col. 16 ll. 9–11 (explaining that "the display . . . may be a flat panel display, a [CRT display], or other device for displaying an image"). Substantial evidence thus supports the PTAB's findings, which are grounded in the teachings of the '800 patent and Poulton.

### 2. The PTAB Satisfactorily Explained Its Determination

Because the PTAB made factual findings with an adequate evidentiary basis, we turn to whether the PTAB satisfactorily explained its findings. The PTAB explained that the '800 patent was not limited to portable devices and also includes remote displays. *Strava*, 2015 WL 5723014, at *10. In addition, the PTAB explained that the '800 patent and Poulton disclose similar levels of portability for VR displays, such that Poulton does not teach away from the portability of Root. *Id.* On this basis, we can "reasonably discern" that the PTAB determined that it would have been obvious to a PHOSITA to configure Root's electronic display to include VR, as taught by Poulton, to create the electronic display that is configured to function as a VR display recited in claims 43 and 71. *NuVasive*, 842 F.3d at 1385 (internal quotation marks and citations omitted).

Icon attempts to undermine the PTAB's explanation for its findings by presenting two arguments, neither of which is persuasive. First, Icon argues anew that Root teaches away from incorporating one or more CRT displays like that of Poulton into the '800 patent. Appel-

lant's Br. 33–35.  Teaching away raises a question of fact reviewed for substantial evidence, and "[a] reference teaches away when it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1354 (Fed. Cir. 2012) (internal quotation marks and citation omitted).  While Icon argues that a CRT display could not be incorporated into Root's portable system, it does not address whether the '800 patent teaches a remote display. It also does not present any evidence supporting its assertions that the non-portable system in Poulton could not inform a PHOSITA about which display to incorporate into a portable system like Root or the '800 patent.  Icon has failed to undermine the PTAB's explanation as to teaching away and the combinability of Poulton and Root. *See, e.g.*, *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) ("Unsubstantiated assertions do not equate to evidence." (internal quotation marks, brackets, and citation omitted)).

Second, Icon argues that the PTAB's explanation of its findings is deficient because the PTAB improperly incorporated written description arguments.  Appellant's Br. 32–33.  Only one statement in the PTAB's analysis could be construed as addressing written description: "[A]s [Strava] point[s] out, the '800 patent does not describe a [VR] display that is part of a portable device." *Strava*, 2015 WL 5723014, at *10 (citation omitted). However, Icon reads the PTAB's statement out of context. This statement was not directed to the parties' previously-addressed written description arguments; instead, it was directed to the PTAB's finding that the '800 patent equates VR displays to CRT displays, *see id.*, a conclusion supported by substantial evidence, *see* '800 patent col. 51 ll. 57–60 (explaining that the "display . . . can be remote from [a] control device" and "can be a [VR] display, [CRT display], and the like").  An isolated statement stripped

from its context is not proof-positive of a PTAB error.  *See VirnetX*, 2016 WL 7174130, at \*4.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  We vacate the Decision on Appeal as to claims 46, 57–62, 65, 74, and 98–100 and remand for further proceedings consistent with this opinion.  We affirm the Decision on Appeal as to claims 43, 71, and 86.

**VACATED-IN-PART, AFFIRMED-IN-PART, AND REMANDED**

COSTS

Each party shall bear its own costs.

# United States Court of Appeals
# for the Federal Circuit

_____

**ICON HEALTH AND FITNESS, INC.,**
*Appellant*

**v.**

**STRAVA, INC., UA CONNECTED FITNESS, INC.,**
*Appellees*

_____

2016-1475

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,359.

_____

O'MALLEY, *Circuit Judge*, concurring in part, dissenting in part.

I concur with the majority's merits discussion in this opinion. I agree that the PTAB properly disallowed claims 43, 71, and 86 of the '800 patent. I also agree that the Board's disallowance of claims 46, 57–62, 65, 74, and 98–100 is not supported by substantial evidence. I write separately because I believe that "remand is not the appropriate remedy in examination appeals in which the PTO has not carried its burden of establishing unpatentability." *In re Van Os*, 844 F.3d 1359, 1362 (Fed. Cir. 2017) (Newman, J., concurring in part, dissenting in part). The PTO and PTAB bear the burden to establish unpatentability in examination appeals, and I agree with the majority that, in large measure, they failed to do so

here.  35 U.S.C. § 102(a) ("A person shall be entitled to a patent unless— . . ."). The appropriate remedy in this situation is to allow any claims for which the PTAB has not carried its burden of proof. Accordingly, rather than simply vacate the PTAB's findings on claims 46, 57–62, 65, 74, and 98–100, I would reverse those findings. From the majority's conclusion otherwise, I respectfully dissent.