Slip Op. 17 - 101

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - - - - -x
INMAX SDN. BHD. and INMAX INDUSTRIES    :
SDN. BHD.,
                         Plaintiffs,    :

              v.                        :

UNITED STATES,                          :    Court No. 17-00205
                         Defendant,
                 -and-                  :

MID CONTINENT STEEL & WIRE, INC.,       :

                 Intervenor-Defendant.  :
- - - - - - - - - - - - - - - - - - - - - -x
```

### Memorandum & Order

[Plaintiffs' application(s) for immediate injunctive relief
 from cash deposits on entries subject to antidumping-duty
 order pending completion of administrative and judicial
 reviews of the basis therefor denied.]

Dated: August 8, 2017

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, deKieffer & Horgan, PLLC, Washington, D.C., for the plaintiffs.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant. With him in opposition Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Adam H. Gordon, The Bristol Group PLLC, Washington, D.C., for the intervenor-defendant.

AQUILINO, Senior Judge: The above-encaptioned plaintiffs commenced this action contesting Certain Steel Nails from Malaysia: Final Results of the Changed Circumstances Review ("CCR"),

published at 82 Fed.Reg. 34476 (July 25, 2017) by the International

Trade Administration, U.S. Department of Commerce ("ITA"), as

discussed in the agency's accompanying issues and decision

memorandum ("IDM") dated July 17, 2017.  In thereby invoking this

court's jurisdiction pursuant to 28 U.S.C. §1581(c), on August 2,

2017 the plaintiffs interposed an application for a temporary

restraining order and a motion for a preliminary injunction,

enjoining the defendant

> until the final and conclusive court decision in this
> litigation from requiring Inmax Industries Sdn. Bhd. to
> pay the increased antidumping cash deposit rate of 39.35%
> currently assigned to Inmax Sdn Bhd. instead of the
> previous 2.66% cash deposit rate on imports assigned to
> Inmax Industries lawfully by the [ITA] at the conclusion
> of the original investigation[,]

to quote from the latter's proposed order.


     To be granted such extraordinary, interim, equitable

relief, a movant must show (1) immediate and irreparable harm, (2)

likelihood of success on the merits, (3) the balance of hardship on

all parties favors it, and (4) such relief is in the public

interest.  See, e.g., FMC Corp. v. United States, 3 F.3d 424, 427

(Fed.Cir. 1993); Zenith Radio Corp. v. United States, 710 F.2d 806,

809 (Fed.Cir. 1983).  In assessing such requirements, the court may

employ a "sliding scale", which means that not every one must be

established to the same degree, and a strong showing on one can

overcome a weaker showing on others. <u>Corus Group PLC v. Bush</u>, 26 CIT 937, 942, 217 F.Supp.2d 1347, 1353 (2002), <u>aff'd</u>, 352 F.3d 1351 (Fed.Cir. 2003), citing <u>FMC Corp</u>., 3 F.3d at 427. "Central to the movant's burden are the likelihood of success and irreparable harm factors." <u>Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.</u>, 74 F.3d 1216, 1219 (Fed.Cir. 1996).

I

Here, the plaintiffs claim "unique" circumstances necessitate the relief prayed for.  By way of background, they explain that they are Malaysian exporters of certain steel nails to the United States subject to ITA's <u>Certain Steel Nails From the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan and the Socialist Republic of Vietnam: Antidumping Duty Orders</u>, 80 Fed.Reg. 39994 (July 13, 2015).  The plaintiffs apparently are related companies, but during the underlying agency investigation they were not "collapsed" pursuant to ITA's regulation thereon into a single entity.[1]  The plaintiffs intimate that this may have been due to the fact that only one of them was commercially exporting subject

---

[1]  <u>See</u> 19 C.F.R. §351.401(f)(1) ("the Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the Secretary concludes that there is a significant potential for the manipulation of price or production").

merchandise during the investigation and point out that the domestic petitioner essentially waived argument over collapsing during the investigation.

When that investigation's final results were published, Inmax Sdn. Bhd. received the 39.35 percent antidumping-duty rate as a result of application of total adverse facts available, and Inmax Industries, not individually investigated, was subjected to the amended "all others" rate of 2.66 percent. As a result of the CCR, however, ITA collapsed the two entities into one and subjected both, as one, to the 39.35 percent cash deposit rate.

The plaintiffs now contend immediate relief is necessary to prevent irreparable harm in that they would lose their right to obtain meaningful judicial review with respect to the cash deposits for entries of merchandise before the completion of the first ITA administrative review, which they anticipate will be in December 2017 and during which the agency has already preliminarily determined a margin for them as collapsed entities of 1.03 percent, and they would thereby lose any benefit of a favorable ruling by the court. They aver that, upon learning of the CCR final results, Inmax Industries ceased production and forewent business opportunities, but also that that entity has shipments en route to the United States that will incur the "extreme high margin" because

they cannot be redirected in a cost-effective way, and the plaintiffs complain they are unable to finance the nearly $4 million in cash deposits that would be required until completion of the first administrative review.  See Plaintiffs' Application, p. 10.

    As for likelihood of success on the merits, the plaintiffs argue the initiation of the CCR

> [wa]s based upon factors already known and verified in the investigation and well prior to the Department's final determination in the investigation.  No new facts or circumstances exist from the investigation.  Nothing in fact changed. The Department's cost verification report from the original investigation observed expressly both "production and sales [by Inmax Industries] had commenced as of the date of the cost verification."[ ] Accordingly, the Department had no basis to find a changed circumstance.

Id. at 14-15, referencing Memorandum from Taija A. Slaughter to Neal M. Halper regarding "Verification of Inmax Sdn. Bhd. in the Antidumping Investigation of Certain Steel Nails from Malaysia," dated February 17, 2015, page 3.

    As to balance of hardships, the plaintiffs contend that no other party will suffer hardship and that the current schedule anticipates completion of the first administrative review in December 2017; hence, at most, injunction would merely "postpone a potential new cash deposit rate for the companies" which only

amounts to an "inconvenience" to the United States. Id. at 20, citing SKF USA, Inc. v United States, 28 CIT 170, 175, 316 F. Supp.2d 1322, 1328 (2004).

Lastly, the plaintiffs point to the steadfast judicial position on the subject of the public interest as being best served when the trade laws of the United States are accurately and fairly administered. Id. at 21, referencing, e.g., Chilean Nitrate Corp. v. United States, 11 CIT 538, 540 (1987).

II

The defendant responds that the plaintiffs submit nothing to substantiate their claim of irreparable harm and "[a]ttorney argument is not evidence" thereof, Def's Resp. at 5, quoting Icon Health & Fitness, Inc. v. Strava, Inc., 849 F.3d 1034, 1043 (Fed. Cir. 2017), and that because the plaintiffs seek to enjoin collection of cash deposits rather than liquidation, there is no basis for presuming harm as a matter of law here, id. See also id. at 6 ("Congress did not intend that the ordinary operation of the antidumping duty law -- which includes the collection of estimated duties in the form of cash deposits, see, e.g., 19 U.S.C. § 1673d(c)(1)(B)(ii) -- could be considered irreparable harm, or it would not have limited section 1516a(c)(2) injunctions to liquidation"), referencing Hohn v. United States, 524 U.S. 236, 249

(1998), and <u>Shandong Dongfang Bayley Wood Co. v. United States</u>, 41 CIT ___, Slip Op. 17-77 at 7, 2017 WL 2838344 at *3 (July 3, 2017) (rejecting attempt to enjoin collection of cash deposits after preliminary determination for want of residual jurisdiction because plaintiff "ma[de] no argument that this is imminent harm to [it] showing that the ordinary means of obtaining judicial review of a Commerce determination will be inadequate in the circumstances of this litigation").  The defendant also contends that the alleged "harm" is actually the result of plaintiffs' own business decision(s), and that good cause did exist to initiate and conduct the CCR, as indicated in the IDM.  <u>See</u> <u>generally</u> Defendant's Response at 2-3, quoting IDM at 5 (citing petitioner's CCR Request at Ex. 4, attached as Ex. 1 to Def's Resp.), and at 6. Consequently, the defendant argues the plaintiffs are unlikely to succeed on the merits and that "maintaining a maximum level of security for the unliquidated entries would serve broadly the public interest of revenue collection." <u>Id</u>. at 9, quoting <u>National Fisheries Institute, Inc. v. United States Bureau of Customs & Border Protection</u>, 34 CIT 1371, 1377, 751 F.Supp.2d 1318, 1325 (2010).

                                  III

        USCIT Rule 65(c) requires a movant for extraordinary, interim, equitable relief to post security in an amount that would be "proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Having considered all the papers submitted herein, this court is not persuaded that disregard of this long-standing requirement, which, in effect, is what the plaintiffs seek, would be appropriate.  Accordingly, the specific relief for which they now plead must be, and it hereby is, denied.

        So ordered.

Dated:  New York, New York
        August 8, 2017


                                    /s/ Thomas J. Aquilino, Jr.
                                        Senior Judge